FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DUSTY D., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 1:23-CV-03095-JAG <br><br> ORDER GRANTING PLAINTIFF'S MOTION |

**BEFORE THE COURT** is Plaintiff's Opening Brief and the Commissioner's Brief in response. ECF No. 10, 12. Attorney D. James Tree represents Dusty D. (Plaintiff); Special Assistant United States Attorney Katherine B. Watson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge by operation of Local Magistrate Judge Rule (LMJR) 2(b)(2) as no party returned a Declination of Consent Form to the Clerk's Office by the established deadline. ECF No. 3. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Motion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the named Defendant.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

## I.    JURISDICTION

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on January 3, 2020 and January 7, 2020 respectively, alleging disability since September 30, 2018.  Tr. 15, 62, 229-43.  The applications were denied initially and upon reconsideration.  Tr. 135-43, 146-59.  Administrative Law Judge (ALJ) C. Howard Prinsloo held a hearing on March 29, 2022, Tr. 34-61, and issued an unfavorable decision on April 13, 2022.  Tr. 12-33.  Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on April 28, 2023.  Tr. 1-6.  The ALJ's April 13, 2022 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 27, 2023.  ECF No. 1.

## II.    STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and the ALJ's decision and only briefly summarized here.  Plaintiff was born in 1980 and was 38 years old on the alleged disability onset date.  Tr. 27.  She does not have a high school diploma and previous employment included work as a cashier.  Tr. 26.

## III.    STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at

1098.  Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## IV.    SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the claimant bears the burden of establishing a prima facie case of disability.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show: (1) the claimant can make an adjustment to other work and (2) the claimant can perform other work that exists in significant numbers in the national economy.  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a

claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V.     ADMINISTRATIVE DECISION

On April 13, 2022, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 12-33.

At *step one*, the ALJ found Plaintiff, who meets the insured status requirements of the Social Security Act through December 31, 2023, had not engaged in substantial gainful activity since the alleged onset date. Tr. 17.

At *step two*, the ALJ determined Plaintiff had the following severe impairments: pancreatitis and depression. Tr. 18.

At *step three*, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id*.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work, with the following limitations:

> [Plaintiff] should avoid concentrated exposure to respiratory irritants and hazards; cannot climb ladders, ropes or scaffolds; and should have only occasional interaction with the general public.

Tr. 20.

At *step four*, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 26.

At *step five*, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of office helper; marker II; and router. Tr. 27-28.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision. Tr. 28.

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II and Title XVI of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review: (1) whether the ALJ conducted a proper step-two analysis; (2) whether the ALJ conducted a proper step-three analysis; (3) whether the ALJ properly evaluated the medical opinion evidence; and (4) whether the ALJ properly evaluated Plaintiff's testimony. ECF No. 10 at 2.

## VII.    DISCUSSION

A.    **Step Two.**

Plaintiff argues the ALJ failed to conduct an adequate analysis at step two. ECF No. 10 at 6-8. At step two of the sequential evaluation process, the ALJ must determine whether the claimant has any severe medically determinable impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques"; and a Plaintiff's "statement of symptoms, a diagnosis, or a medical opinion does not establish the existence of an impairment." 20 C.F.R. §§ 404.1521, 416.921. After establishing that Plaintiff has a medically determinable impairment, it is then determined whether the impairment is severe. *Id*. An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. §§ 404.1522, 416.922(a). "An

impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted). The claimant bears the burden of demonstrating that an impairment is medically determinable and severe. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

Here, the ALJ found Plaintiff's severe impairments were pancreatitis and depression. Tr. 18. The ALJ noted Plaintiff also had hypertension but determined that "as the evidence does not show this condition has more than a minimal effect on [Plaintiff's] ability to perform basic work activities, it cannot be considered 'severe' for purposes of this decision." *Id*. The ALJ also found that "[Plaintiff] has alleged her disability is due, in part to degenerative disc disease and numbness of her left arm," but concluded "the evidence does not include objective findings to indicate these conditions are medically determinable severe impairments. *Id*.

Plaintiff contends the ALJ erred by not properly assessing Plaintiff's spinal disorder, because records showed she had a medically determinable spinal impairment and it was severe. ECF No. 10 at 6-8. Defendant contends the ALJ's step two finding was reasonable, any error is harmless because the ALJ resolved step-two in Plaintiff's favor and considered any limitations posed by the alleged condition later in the sequential evaluation. EFC No. 12 at 2-5.

The Court finds the ALJ erred in concluding Plaintiff's spinal impairment(s) was not a medically determinable impairment and in failing to consider relevant evidence of other medically determinable impairments at step two or elsewhere in the decision. After establishing that Plaintiff has a medically determinable impairment, it is then determined whether the impairment is severe. 20 C.F.R. §§ 404.1521, 416.921. Here, the ALJ concluded that Plaintiff's severe impairments were pancreatitis and depression, her hypertension was nonsevere, and that "the

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

evidence [did] not include objective findings to indicate [degenerative disc disease and numbness in the left arm]" were medically determinable and severe impairments. Tr. 18. There was no discussion by the ALJ at step two or elsewhere in the decision of relevant evidence of impairments especially kidney/renal impairment(s). On this record the ALJ's analysis is insufficient.

First, records show objective findings of a spinal disorder; these include findings of "multilevel degenerative discs" observed upon CT scan of her abdomen and pelvis in March 2019, and "multilevel degenerative disc disease" noted on CT in April 2019. Tr. 510, 560. Although the imaging was performed due to her acute issues of abdominal pain with pancreatic and renal calculus, the radiologist observed degenerative disc disease, as well, and Plaintiff's medical history of degenerative disc disease is also noted by providers throughout the record. *See, e.g.*, Tr. 501, 508, 560, 612, 614, 668, 762. Records from prior to her alleged onset date also show treatment for chronic back pain, with objective findings upon physical exam including positive straight leg raise bilaterally and tenderness to palpation. *See, e.g.*, Tr. 808, 810, 812. In 2021, treating provider Dr. Celerian noted his chart review showed documentation of back pain since 2014, and that an MRI in 2017 demonstrated minimal degenerative spondylosis greatest at L4-5 and L5-S1. Tr. 762. Upon physical exam in 2021 Dr. Celerian also observed back spasm, positive straight leg raise on the right, reduced range of motion in the lumbar spine, tenderness to palpation, and jolting gait. Tr. 763. While the ALJ mentioned back/spine findings once in the decision after the step two finding, this was only to discount a portion of Dr. Celerian's opinion; the ALJ concluded "Dr. Celerian notes, in fact, that, from an objective standpoint, there is only evidence of 'minimal' degenerative spondylosis." Tr. 25.

While Defendant notes the findings in relation to Dr. Celerian to suggest the ALJ considered the spinal impairment, ECF No. 12 at 3, this does not comport

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

with the ALJ's finding at step two. Tr. 18. At step two, the ALJ explained he found one impairment, hypertension, nonsevere; the ALJ then explained that "the evidence, however, does not include objective findings to indicate [degenerative disc disease and arm numbness] are medically determinable severe impairments." Tr. 18. Indeed, the ALJ discounted a portion of Dr. Celerian's opinion later in the decision because he found lower back pain with muscle spasms and pain into her legs was "not documented in the record," despite Dr. Celerian's physical exam findings *supra*. Tr. 25. Only medically determinable impairments are considered at later steps of the sequential evaluation and in the RFC. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, (effective July 2, 1996). On remand, the ALJ will reconsider whether Plaintiff has a spine impairment and, if so, whether it is severe.

      Additionally, the ALJ failed to discuss relevant evidence of a kidney/renal impairment at step two or anywhere else in the decision. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Here, alongside Plaintiff's pancreas impairment, records show what appears to be significant renal issues including ureterolithiasis (kidney stones) and renal colic also diagnosed at her January 2019 hospitalization. See Tr. 444, 449. The stone was noted as large and obstructing at that time, and she underwent a stenting procedure. Tr. 449. Renal imaging in April 2019 showed stable appearance of left renal atrophy, a 9 mm renal pelvis stone and internal left ureteral stent, as well as sequalae of pancreatitis including pancreatic calcifications and pseudocysts. Tr. 511. Lab results were positive for a kidney infection and UTI, and she was also diagnosed with complicated pyelonephritis. *Id*. Treatment included Percocet. *Id*.

At a urology consult in June 2019, the specialist noted that Plaintiff had a "long complex history re pancreatitis and [that she] presented with abdominal pain Jan 2019. She was found to have pancreatitis but also had a 10mm stone . . . stent was placed with dislodgement of the stone into the lower pole . . . she is here today for preop ESWL therapy"; the urologist noted due to the size of the renal stone "two treatments might be necessary." Tr. 444. Records show she had additional procedures including cystoscopy of the bladder with left ureteral stent exchange, and lithotripsy later in June 2019. *See, e.g.*, Tr. 103, 422, 438, 444, 449. The ALJ does not mention any of these findings or Plaintiff's diagnoses and treatment for renal issues throughout 2019, and none of the visits that focus on her renal issues are discussed in the ALJ's summary of 2019 ER visits for pancreatitis around the same time. *See* Tr. 21. At an ER visit in April 2019, for example, Plaintiff reported ongoing pain and a repeat CT scan was obtained and compared to imaging she received in March 2019; notable pancreatic and renal findings were observed on both occasions, but the ALJ did not address relevant evidence from this visit nor the results of relevant imaging here and elsewhere, or resultant multiple procedures (for renal and pancreatic issues) later that year in the decision. Tr. 17-28, 507-511; *see, e.g.*, 444, 449, 509, 511, 588. At a urology consult during her January 2019 hospitalization, the specialist also noted renal atrophy on imaging "suggestive that this is a long term process and possibly associated with recurrent urinary tract infections." Tr. 595.

The ALJ's erred in failing to discuss relevant evidence of Plaintiff's impairments. An error is harmless where it is nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ determined Plaintiff did not have a medically determinable spine impairment and failed to discuss relevant evidence of kidney/renal impairment(s). These errors were harmful

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

because in finding any spinal impairment(s) were not medically determinable impairments, as opposed to severe or nonsevere, and in failing to discuss Plaintiff's kidney/renal issues at all, the ALJ did not consider these impairment(s) in the later steps of the sequential analysis, including at step three under the musculoskeletal and renal listings, or in the RFC.  The ALJ's failure to discuss relevant evidence, including evidence of at least one impairment that likely contributed to chronic pain symptoms during the period at issue, resulted in an insufficient analysis.  On this record, the Court cannot confidently conclude that the disability determination would remain the same, or the same for the entire period at issue, were all Plaintiff's impairments considered at later steps of the sequential analysis and/or included in the RFC.

Upon remand the ALJ will reconsider all evidence of record with the assistance of a medical expert.  The ALJ is instructed to reperform the sequential analysis, including the step-two analysis, with the assistance of medical expert testimony.

B.      **Medical Opinions.**

Plaintiff contends the ALJ improperly evaluated the opinions of P. Metoyer, Ph.D.; C. Celerian, D.O.; and the DDS consultants.  ECF No. 10 at 17-21.

For claims filed on or after March 27, 2017, pursuant to the applicable regulations, the ALJ does not give any specific evidentiary weight to medical opinions or prior administrative medical findings.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors

(such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may explain how the ALJ considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  *Id.*  Supportability and consistency are explained in the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The Ninth Circuit has addressed the issue of whether the regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the 2017 regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id.* at 788-89, 792.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source

has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id*. at 792.

1. **DDS.**

In March 2020, state agency medical consultant Dr. Makari reviewed Plaintiff's records on behalf of DDS. Tr. 70-72. Dr. Makari opined Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry ten pounds, stand and walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 70-71. Dr. Makari opined Plaintiff should never climb ladders, ropes, or scaffolds, and could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and she should avoid concentrated exposure to pulmonary irritants and should avoid all exposure to hazards. Tr. 71-72. Dr. Makari explained both the postural and environmental limitations were "due to opiate pain medications." *Id*. In March 2021, Dr. Alto affirmed Dt. Makari's opinion. Tr. 100-03.

The ALJ found Dr. Makari and Dr. Alto's opinions largely persuasive because they were well-supported by their narrative reports and consistent with the longitudinal record, but discounted their opinion that Plaintiff "should be limited to only frequent climbing of ramps and stairs and frequent balancing, stooping, kneeling, crouching, and crawling," because "there is simply nothing in the record to indicate the [Plaintiff] has an impairment that would limit her ability to perform these postural activities." Tr. 24-25. The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is, and the more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

      Here, Dr. Makari and Dr. Alto explained that their opinion as to postural and environmental limitations was "due to opiate pain medications." Tr. 71-72, 100-01. Dr. Alto also provided additional explanation for her opinion at the reconsideration level, noting that "overall evidence received" at both the initial and reconsideration levels showed Plaintiff had "chronic calcific alcoholic pancreatitis failing multiple stents (for pancreatic duct stones)" and had "significant chronic pain (on opioid therapy)." Tr. 103. She explained Plaintiff was "sober for 3 years +" and also had a "previous intussusception" as well as "previous ureterolithiasis with ureteral stent after lithotripsy." *Id*. Dr. Makani and Dr. Alto explained their multiple postural limitations were due to Plaintiff's treatment with opiate pain medication for chronic pain, and the ALJ's conclusion their limitations were unsupported/inconsistent with the record is not supported by substantial evidence.

      The ALJ also failed to explain why he failed to adopt the environmental limitation to avoid all hazards. Tr. 24. Dr. Makani and Dr. Alto opined Plaintiff should avoid concentrated exposure to pulmonary irritants and avoid all exposure to hazards. Tr. 71-72, 100-03. The ALJ found that Plaintiff "should avoid concentrated exposure to respiratory irritants and hazards," however, without explanation of why he discounted the state agency opinion limiting *all* exposure to hazards. Tr. 20. Dr. Makari and Dr. Alto explained both the postural and environmental limitations were also "due to opiate pain medications." *Id*.

      The ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). The ALJ erred as he found the state agency opinions generally persuasive but failed to include the postural and environmental limitations in the RFC or to provide adequate/any rationale for formulating Plaintiff's RFC without the higher level of restriction(s).

As the case is remanded for the errors at step two, the Court declines to perform a harmless error analysis. Upon remand the ALJ will reconsider the state agency medical opinions and incorporate the limitations in the opinion into the RFC or give reasons supported by substantial evidence to reject the opinions.

### 2.   Other Opinions.

Plaintiff contends the ALJ also improperly evaluated the other medical opinions. ECF No. 10 at 17-21. As the case is remanded for the errors at step two and the reasons discussed *supra*, the Court declines to further address this issue.

Upon remand the ALJ will reassess the medical evidence of record, including all medical opinion evidence, with the assistance of medical expert testimony. The ALJ will set forth an analysis of the consistency and supportability of all medical opinions, as required by the regulations. The ALJ is to incorporate the limitations in the opinions into the RFC or give reasons supported by substantial evidence to reject the opinions.

### C.   Step Three and Subjective Complaints.

Plaintiff also contends the ALJ failed to properly assess the listings at step three and failed to properly assess Plaintiff's symptom complaints. ECF No. 10 at 3-6, 8-17. As the case is remanded due to errors discussed *supra*, the Court declines to reach these issues. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

Upon remand, the ALJ shall carefully reevaluate Plaintiff's statements with the assistance of medical expert testimony and any other evidence or testimony necessary. The ALJ is also instructed to reperform the sequential analysis, including reconsidering the step-three analysis with the assistance of medical expert testimony; the ALJ will reconsider whether Plaintiff's impairments meet or equal a listing and set forth an analysis of the relevant listings.

## VIII.   CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error. The Court finds further proceedings are necessary to obtain medical expert testimony, as well as to resolve conflicts in the record, including conflicting medical opinions.

On remand, the ALJ will obtain all updated medical records and reevaluate the medical evidence of record with the assistance of medical expert testimony. The ALJ is instructed to perform the sequential analysis anew, making new findings on each of the five steps of the sequential evaluation process, to reassess all medical opinion evidence using the factors required by the regulations, and to reassess Plaintiff's symptom claims, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion to remand, **ECF No. 10**, is **GRANTED**.

2. Defendant's Motion to affirm, **ECF No. 12**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

5. The District Court Executive is directed to update the docket sheet to reflect the substitution of Martin O'Malley as Defendant and to file this Order and

provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 30, 2024.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE